```
                UNITED STATES DISTRICT COURT
              FOR THE DISTRICT OF NEW HAMPSHIRE
```

Christopher Brodeur

   v.                                  Civil No. 17-cv-445-PB

State of Massachusetts; Governor
Charlie Baker (and his staff); Senator
Jeanne Shaheen (and her staff); Cara Wry;
Mass. RMV; and Police Officers FNU Moffa
and John Does 1 & 2


**REPORT AND RECOMMENDATION**

Pro se plaintiff, Christopher Brodeur, has filed a document that he labels as a "R.I.C.O. Complaint" and as an "Emergency Pleading" (Doc. No. 1), which the court has docketed as a complaint. The complaint is here for review pursuant to 28 U.S.C. § 1915(e)(2).[1] Brodeur's request for preliminary injunctive relief, set forth in the complaint, was the subject of the October 6, 2017 Report and Recommendation ("October 6 R&R") (Doc. No. 4), that has been withdrawn by an Order issued this date. Brodeur's request for a preliminary injunction is also addressed in this Report and Recommendation ("R&R").

---

[1] Plaintiff has not yet paid the filing fee. The court has directed plaintiff by November 27, 2017 either to pay the filing fee or to file supplemental information regarding his regular monthly expenses if he seeks leave to proceed in forma pauperis. See Oct. 23, 2017 Order; Oct. 5, 2017 Order; Sept. 27, 2017 Order (Doc. No. 3).

**Background**

The following is a summary of pertinent facts stated in the original complaint (Doc. No. 1), as clarified by Brodeur in his "Rebuttal" (Doc. No. 9).  Brodeur asserts he was issued a speeding ticket in Massachusetts in the 1980s, which he promptly paid.  See Doc. No. 1; Doc. No. 9, at 1.  Brodeur further asserts that, around the same time he was issued the ticket he paid, he ran out of gas on Interstate 495.  Doc. No. 1; Doc. No. 9, at 1.  A state trooper took his driver's license, ran a check, and then arrested Brodeur for driving with a suspended license.  See Doc. No. 9, at 1.  A month later, in a hearing on the suspended license charge, the state produced Massachusetts Registry of Motor Vehicle ("RMV") records indicating that the RMV had made a clerical error, and that Brodeur had paid the underlying speeding ticket on time.  See id.  Brodeur alleges that the Massachusetts court in that proceeding fined him "illegally," and excessively, given how much it had cost Brodeur to get his car back after that "false" arrest.  Id.

Brodeur asserts that he was falsely arrested, without probable cause, more than once in Massachusetts in the late 1980s.  In the 1990s, he alleges, he was arrested without probable cause, after a police officer in Massachusetts mailed

2

an arrest warrant to him.  See Doc. No. 1.  At a hearing relating to that arrest warrant, a court in Massachusetts told Brodeur that the warrant was invalid, and released him.  See id. Brodeur has listed Officer Moffa and two John Doe officers as defendants, in connection with those Massachusetts arrests and/or traffic violations.  See Doc. No. 1.

Brodeur has not had a driver's license for a number of years.  See generally Doc. No. 1.  Brodeur alleges that in 2015, when he went to the New Hampshire Division of Motor Vehicles to apply for a license, he was told he needed to pay fines and fees relating to four unpaid Massachusetts tickets, dating from 1989, before a New Hampshire license could be issued.  See id. Brodeur asserts that the four tickets are "bogus," and that he was not previously aware that they existed.  Doc. No. 1.

Brodeur asserts that from 2015-2017 he made a number of calls to government offices to obtain advice and assistance relating to those tickets.  He was told by "everyone" he contacted at the Massachusetts RMV, at Massachusetts Governor Charlie Baker's office, and in the Massachusetts courts, that he could not contest the four 1989 tickets in question.

Brodeur asserts that his phone calls to U.S. Senator Jeanne Shaheen's office in New Hampshire were similarly unavailing.  A

number of staffers, including Cara Wry, repeatedly hung up on Brodeur.  See Doc. No. 9, at 4.  Wry falsely told Brodeur that it is not a federal issue when the federal rights of a New Hampshire resident are violated.  See Doc. No. 1.

Brodeur further asserts in conclusory terms that he was subjected to "false arrests" twice recently, and he asserts those arrests "couldn't have happened but for the illegal actions of the defendants."  Doc. No. 9, at 3.  He asserts he needs a driver's license to attend hearings in "other towns" to challenge those false arrests.  See id. at 5.  In addition, he asserts that he recently received notice from the Massachusetts RMV that there are additional unpaid fines and fees pending against him in Massachusetts, and that his driver's license is subject to suspension in January 2018.  See id.

Brodeur claims that the police and courts in Massachusetts in the 1980s and 1990s engaged in tortious, criminal, and unconstitutional acts relating to false arrests, convictions, and errors in his records.  He further alleges that government offices he contacted beginning in 2015 engaged in fraud and theft.  Brodeur cites the Racketeer Influenced Corrupt Organizations Act ("RICO") and the False Claims Act, in asserting that taxpayers pay the salary of those government

4

employees who did not do their jobs and hung up on his calls. Brodeur asserts that police officers and state courts in Massachusetts, and government employees in Massachusetts and in Senator Shaheen's office failed to help him and violated his rights. Brodeur characterizes defendants' conduct as tortious, criminal, unconstitutional, derelict, and lazy. Brodeur seeks damages, injunctive relief, and a writ of mandamus.

## Discussion

### I. Preliminary Review

#### A. Standard

The federal law authorizing the filing of lawsuits by plaintiffs proceeding in forma pauperis, 28 U.S.C. § 1915(e)(2), provides for sua sponte review of their claims, as follows: "Notwithstanding any filing fee . . . that may have been paid, the court shall dismiss the case at any time if the court determines that . . . (B) the action . . . (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." Id. Pursuant to that authority, this court may dismiss one or more claims, where the plaintiff has not paid the filing fee, if the court lacks jurisdiction,

the action is frivolous, a defendant is immune from the relief sought, or the complaint fails to state a claim upon which relief may be granted. See id. The complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief'" that is plausible on its face. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation omitted). In conducting this preliminary review, the court construes pro se complaints liberally. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam).

B.  Eleventh Amendment

Brodeur names a state, Massachusetts, and the Massachusetts RMV as defendants. Brodeur's claims against those entities are barred by the Eleventh Amendment, and should be dismissed. See Town of Barnstable v. O'Connor, 786 F.3d 130, 138 (1st Cir. 2015); New Hampshire v. Ramsey, 366 F.3d 1, 14 (1st Cir. 2004). Those defendants should be dropped from this case.

C.  Torts

Brodeur asserts that defendants engaged in conduct that violated state or federal criminal laws, and that constituted fraud and other torts. Brodeur's fraud and unjust enrichment allegations are generally non-specific, including his allegations that federal employees failed to "do their jobs"

while still collecting their paychecks. Without more, Brodeur's allegations of defendants failing to do jobs they are paid to do, and defendant Wry's statement characterizing Brodeur's concerns as a state government issue and not as a federal issue, do not give rise to any claim upon which relief can be granted. Plaintiff has failed to allege any acts of fraud causing him injury, with the specificity required by Fed. R. Civ. P. 9. Stripped of legal conclusions about unjust enrichment, fraud, negligence, theft, and malpractice, the complaint fails to state a claim relating to Wry's statements.

    D.    Crimes

In general, there is no federal right to have criminal wrongdoers prosecuted. See Nieves-Ramos v. Gonzalez-De-Rodriguez, 737 F. Supp. 727, 728 (D.P.R. 1990) (citing Linda R. S. v. Richard D., 410 U.S. 614, 619 (1973) ("a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another")). Accordingly, the district judge should dismiss Brodeur's claims, asserting a right to relief based on defendants' alleged criminal conduct.

    E.    RICO

"To state a RICO claim, plaintiffs must allege four elements: '(1) conduct, (2) of an enterprise, (3) through a

pattern, (4) of racketeering activity.'" Giuliano v. Fulton, 399 F.3d 381, 386 (1st Cir. 2005).  Cf. 18 U.S.C. § 1961(1) (racketeering includes, among other things, federal mail fraud; federal wire fraud; and felony acts of kidnapping, robbery, bribery, or extortion, chargeable under state law).  "[T]he civil damages provision of the RICO statute . . . allows '[a]ny person injured in his business or property by reason of a [RICO violation]' to recover damages.  The term 'by reason of' refers to both but-for causation and proximate causation." Painters & Allied Trades Dist. Council 82 Health Care Fund v. Forest Labs., Inc. (In re Celexa & Lexapro Mktg. & Sales Practices Litig.), 315 F.R.D. 116, 123-124 (D. Mass. 2016) (citations omitted).  RICO is subject to a four-year statute of limitations, which begins to run when the plaintiff knew or should have known of his injury.  Lares Grp., II v. Tobin, 221 F.3d 41, 45 (1st Cir. 2000); P.R. Med. Emergency Grp., Inc. v. Iglesia Episcopal Puertorriqueña, Inc., 118 F. Supp. 3d 447, 459 (D.P.R. 2015).

Plaintiff's RICO claims arising from arrests and proceedings involving Brodeur in the 1980s and 1990s are barred by the statute of limitations.  Furthermore, when stripped of speculative legal conclusions about conspiracy, fraud, and "kidnapping," the complaint fails to state a claim that two or

more predicate acts of racketeering, conducted by an enterprise, proximately caused injury to Brodeur's business or property interests. Because the Complaint fails to state a claim under RICO, the RICO claims should be dismissed.

F. False Claims Act

The False Claims Act ("FCA") creates a cause of action for the United States to recover economic losses incurred from fraudulent claims for payment. See 31 U.S.C § 3729. Under the "qui tam" provision, private "relators" who have evidence of fraud, may assert the government's claim on its behalf. See id. § 3730(b). Plaintiff is proceeding pro se in this action; as such, he is prohibited from bringing an FCA complaint. See United States ex rel. Mergent Servs. v. Flaherty, 540 F.3d 89, 93 (2d Cir. 2008) ("Because relators lack a personal interest in False Claims Act qui tam actions . . . they are not entitled to proceed pro se."). Accordingly, the district judge should dismiss the FCA claims asserted in this action.

G. Mandamus

A petition for a writ of mandamus is pursued via the Mandamus and Venue Act, 28 U.S.C. § 1361 ("MVA"), which provides that "the district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or

9

employee of the United States or any agency thereof to perform a duty owed to the plaintiff." "The common-law writ of mandamus, as codified in 28 U.S.C. § 1361, is intended to provide a remedy for a plaintiff only if he has exhausted all other avenues of relief and only if the defendant owes him a clear nondiscretionary duty." Heckler v. Ringer, 466 U.S. 602, 616, (1984. Accord In re City of Fall River, 470 F.3d 30, 32 (1st Cir. 2006). As to the federal employees named as defendants – Senator Jeanne Shaheen's staff in New Hampshire – plaintiff has pointed to no nondiscretionary duties that those individuals failed to perform. Fielding all constituent phone calls without hanging up, providing an opinion a constituent wants to hear about the federal or state nature of a particular concern, and helping a constituent on issues involving the state courts and state motor vehicle regulations are not nondiscretionary duties that federal law requires those individuals to perform. Accordingly, the district judge should dismiss any mandamus claims targeting the conduct of the state or federal agents named as defendants.

    H.    Claims Relating to Massachusetts Tickets and Arrests

Brodeur asserts that he has been told by unnamed persons in the Massachusetts courts, the Massachusetts Governor's office,

and the Massachusetts RMV that he cannot challenge the validity of speeding tickets that must be paid before he can receive a New Hampshire driver's license. Brodeur claims that the lack of a remedy in Massachusetts for what he considers to be bogus tickets violates his Fourteenth Amendment right to due process. In addition, Brodeur's pleadings assert claims of violations of his federal civil rights and torts relating to false arrests and state proceedings occurring decades ago in Massachusetts.

The facts asserted in the complaint indicate that this court lacks personal jurisdiction over the Massachusetts officers or officials named as defendants to those claims, as all of their alleged unconstitutional conduct occurred in Massachusetts. See Hull v. Bor. of Pt. Pleasant Beach, No. 10-cv-356-PB, 2011 DNH 42, 2011 WL 1033716, at *2, 2011 U.S. Dist. LEXIS 29644, at *4-*6 (D.N.H. Mar. 22, 2011) (New Hampshire court lacked personal jurisdiction over local officials in New Jersey who caused bogus complaints to be lodged in New Jersey and caused plaintiff's driver's license to be suspended in New Jersey, notwithstanding their knowledge that New Hampshire would refuse to renew plaintiff's New Hampshire driver's license because of New Jersey license suspension, as "defendant's unconstitutional conduct occurred entirely in New Jersey," and

11

"[t]his is not the exceedingly rare case where a relatedness claim can be established solely through the in-state 'effects of out-of-state conduct'" (citation omitted)). Cf. Trujillo v. Williams, 465 F.3d 1210, 1217 (10th Cir. 2006) ("under [28 U.S.C.] § 1915, the district court may consider personal jurisdiction . . . sua sponte 'only when the defense is obvious from the face of the complaint and no further factual record is required to be developed,'" and dismissal is permitted only if it is clear that plaintiff can allege "'no set of facts'" to support personal jurisdiction (citations omitted)). Furthermore, the tort claims and federal constitutional claims arising out of Brodeur's arrests and court proceedings that occurred in the 1980s and 1990s would be barred by the applicable statute of limitations. See Nieves v. McSweeney, 241 F.3d 46, 51 (1st Cir. 2001). Accordingly, the district judge should dismiss Brodeur's claims related to the Massachusetts tickets and to events that occurred in Massachusetts in the 1980s and 1990s, for lack of personal jurisdiction over the defendants, and for failure to state a claim.

   I.   Conspiracy Claims

Although "pro se complaints are to be read generously, allegations of conspiracy must nevertheless be supported by

material facts, not merely conclusory statements." Slotnick v. Garfinkle, 632 F.2d 163, 165 (1st Cir. 1980) (per curiam) (citation omitted); see also Iqbal, 556 U.S. at 678 (conclusory nature of allegations not entitled to presumption of truth). Stripped of the conclusory accusations of a conspiracy between defendants in this case, Brodeur's pleadings lack sufficient allegations to state a plausible conspiracy claim. Accordingly, the district judge should dismiss the conspiracy claims.

J.   Remaining Claims

Brodeur further claims that defendant Cara Wry and other unnamed government employees violated his rights under the Fifth and First Amendments, and otherwise engaged in tortious or illegal conduct, by hanging up on him. Brodeur's allegations, taken as true, may show unprofessional conduct on the part of those individuals, but fail to give rise to any cognizable claim.

Brodeur asserts in general terms that recently he has been subjected to "false arrests" that are the subject of hearings in other towns, and that the Massachusetts RMV has notified him that his driver's license is subject to suspension in January 2018. Those matters are alleged in a conclusory fashion, in a manner that fails to state a claim upon which relief can be

13

granted, when the legal conclusions are stripped away. Accordingly, such claims should be dismissed.

## II. **Preliminary Injunctive Relief**

Plaintiff requests a preliminary injunction in this action, including an order directing the Commonwealth of Massachusetts to void the allegedly unpaid 1989 tickets or to provide him with "due process to debunk them," Doc. No. 1; and directing New Hampshire officials (who are not named as parties) to allow Brodeur to "take the [driver's license] test & get his license while the allegedly fake 1989 tix (etc[.]) are resolved." Doc. No. 9, at 5.

"'A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.'" Glossip v. Gross, 135 S. Ct. 2726, 2736 (2015) (citation omitted). "Though each factor is important . . . '[t]he sine qua non of this four-part inquiry is likelihood of success on the merits.'" Sindicato Puertorriqueño de Trabajadores, SEIU Local 1996 v. Fortuño, 699 F.3d 1, 10 (1st Cir. 2012) (per curiam) (citation omitted). "To demonstrate likelihood of success on the merits, plaintiffs must

show 'more than mere possibility' of success – rather, they must establish a 'strong likelihood' that they will ultimately prevail." Id. (citation omitted).  The burden of proof is on the movant.  See Esso Std. Oil Co. v. Monroig-Zayas, 445 F.3d 13, 18 (1st Cir. 2006).

For reasons stated in this Report and Recommendation, Brodeur has failed to state a claim upon which relief can be granted.  Brodeur has thus failed to demonstrate a likelihood of success on the merits of any claim in this case.  Accordingly, the district judge should deny Brodeur's request for preliminary injunctive relief.

## Conclusion

For the foregoing reasons, the district judge should dismiss this action, pursuant to 28 U.S.C. § 1915(e)(2), and also deny the request for preliminary injunctive relief set forth in the Complaint (Doc. No. 1).  Any objections to this Report and Recommendation must be filed within fourteen days of receipt of this notice.  See Fed. R. Civ. P. 72(b)(2).  The fourteen day period may be extended upon motion.  Failure to file objections within the specified time waives the right to appeal the district court's order.  See Santos-Santos v. Torres-

Centeno, 842 F.3d 163, 168 (1st Cir. 2016).

_____
Andrea K. Johnstone
United States Magistrate Judge

October 26, 2017

cc:  Christopher Brodeur, pro se